## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ERIC J. TAYLOR,

                                 Plaintiff,

       vs.                                  9:17-CV-1014
                                              (LEK/ATB)

P. SCHMIDT, Nurse,

                                 Defendant.

ERIC J. TAYLOR, Plaintiff, pro se
MATTHEW P. REED, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge.  Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that he was denied constitutionally adequate medical care while he was incarcerated at Coxsackie Correctional Facility. (Complaint ("Compl.")) (Dkt. Nos. 1-1-3).[1]

Presently before the court is defendant P. Schmidt's[2] motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 14).  Plaintiff has responded in opposition to the motion.[3] (Dkt. No. 16).  For the following reasons, this court agrees

---

[1] Plaintiff has attached an "Addendum," a "Memorandum of Law," and "Exhibits" to his complaint. (Dkt. Nos. 1-1 - 1-3).  The "Memorandum of Law" contains a synopsis of plaintiff's version of the facts. (Dkt. No. 1-2 at CM/ECF pp.3-6).  Each document has been filed separately, but the court has considered all of the documents as part of the plaintiff's complaint.

[2] Nurse P. Schmidt is the only remaining defendant.  All other defendants were dismissed by Senior Judge Kahn's initial order dated November 28, 2017 and subsequent Text Order dated December 13, 2017. (Dkt. Nos. 6, 10).

[3] Although plaintiff has labeled this document a "Notice of Motion for Summary Judgment," it is not in the proper form for a summary judgment motion and does not contain a "Statement of

with defendant and will recommend dismissal of the complaint.

## I.    **Facts**

Plaintiff states that he underwent a hip replacement in approximately 2011 or 2012, at St. Peter's Hospital in Albany, New York, prior to his incarceration with the Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 1-2 at 3).  Plaintiff alleges that after the surgery, he was prescribed "heavy pain medication" because he was having trouble "adjusting," and walking caused him "constant pain." (*Id.*)  Plaintiff states that, upon his arrival at Coxsackie, his medication was changed to Tylenol, Advil, "etc.," none of which addressed plaintiff's pain properly. (*Id.* at 5). Plaintiff was issued a back brace, knee brace, cane, and a medical pass "designating him as a first floor inmate per medical department." (*Id.*)

Plaintiff alleges that on February 21, 2015, he was transferred to C-Block, which is a third-floor housing unit. (*Id.* at 3).  Plaintiff states that on February 25, 2015,[4] he went to sick-call and informed the nurses that he had been moved to a third-floor housing unit, and that it was causing him pain and discomfort trying to negotiate three flights of stairs every time he had to go somewhere, including to meals, school, and sick-call. (*Id.*)  Plaintiff claims that at this sick-call, the nurse refused to reissue the plaintiff's "flats pass." (*Id.*)

On February 25, 2015, plaintiff fell down the stairs and was taken to Albany Medical Center Hospital ("AMCH"). (*Id.*)  Plaintiff claims that the fall caused neck

---

Material Facts" or a Memorandum of Law. (Dkt. No. 16). The court has considered plaintiff's submission a response in opposition to defendant's motion to dismiss.

[4] Although this factual summary states that plaintiff went to sick call on February 25, 2015, the plaintiff's exhibits show, that he went to sick call on February 24, 2015. (Dkt. No. 1-2 at 3, 1-3 at 23).

injuries, severe headaches, back pain, and affected his range of motion. (*Id.* at 4).

Plaintiff states that after his fall, he was still required to attend school on the third floor

of the school building. (*Id.*)  Plaintiff states that on March 2, 2015, he was re-issued a

"flats pass," but the damage had already been done. (*Id.*)

The complaint made various allegations against multiple defendants.  On

November 28, 2017 and December 13, 2017, Judge Kahn dismissed plaintiff's claims

against all but Nurse Phyllis Schmidt. (Dkt. Nos. 6, 10).  Plaintiff claims that defendant

Schmidt was deliberately indifferent to plaintiff's serious medical needs. (Dkt. No. 1-2

at 3, 5).

## II.    <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain

sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*.,

550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's

consideration is limited to the factual allegations as stated in the complaint, documents

attached to the complaint as exhibits or incorporated into the complaint by reference,

and matters of which the court can take judicial notice. *Portillo v. Webb*, No. 16 Civ.

4731, 2017 WL 4570374, at *1 (S.D.N.Y. ) (quoting *Brass v. Am. Film Tech*., 987 F.2d

142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,

47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record pursuant to

Fed. R. Evid. 201(b). *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).  In the case of a pro se litigant, the court may also consider materials that the pro se attaches to his or her papers in opposition to the motion to dismiss. *Portillo v. Webb*, 2017 WL 4570374, at *1 (citations omitted).

## III.   Medical Care

### A.   Legal Standards

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

#### 1.   Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.*  The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

4

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## 2.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing *Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference.  *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent."  *Farmer*, 511 U.S. at 844.  The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable."  *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates.  *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.  *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.  *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v.*

6

*Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### B.    Application

Defendant argues that plaintiff has failed to allege that he has a serious medical need, and in the alternative that plaintiff has also failed to properly state a claim that defendant Nurse Schmidt was deliberately indifferent to any serious medical need. (Dkt. No. 14-1). Based upon all the exhibits that plaintiff has filed with his complaint, it is clear that he received medical care. He disagreed with the quantity and quality of that care, particularly the lack of speed with which it was provided and the alleged improper reading of his medical tests. Even if this court assumes that plaintiff's impairments rise to the level of a serious medical need, plaintiff has not stated a claim for deliberate indifference by Nurse Schmidt, the only remaining defendant.

In plaintiff's complaint, plaintiff complains about "nurses," but the only specific allegations that he made against defendant Schmidt are that, after plaintiff was issued his "flats" pass, but was still assigned to school on the second floor, "he again saw Nurse Schmidt[,] and she refused to address the issue and gave no help whatsoever." (Compl. Dkt. 1-2 at 5). Plaintiff attempts to support his argument by citing to the Central Office Review Committee ("CORC") review of the denial of plaintiff's grievance. (Dkt. No. 1-2 at 5). Plaintiff states that even the CORC noted that he saw

7

the nurse on "3/24/15,"[5] complaining about his knees, and was "ignored" by Nurse

Schmidt, and he fell down the stairs the "very next day on 2/25/15." (*Id.*)

Most of plaintiff's allegations are general complaints about the care that he

received, the difficulty he had in obtaining stronger pain medication, and the failure of

"Coxsackie" to properly read an MRI.[6] (Dkt. No. 1-2 at 3-6).  Plaintiff states that he

was told that his original MRI showed "nothing," while several months later, he was

told by Dr. Roberts that he had two bone chips in his leg "which of course like

everything else went untreated because Coxsackie Medical either couldn't read the

MRI or someone supposedly experienced in these matters missed two bone chips??"

(Dkt. No. 1-2 at 6).

In his response to the defendant's motion to dismiss, plaintiff focuses on the

2016 bone scan, after which plaintiff was allegedly advised that he had two bone chips

that were not diagnosed on the "earlier MRI." (Dkt. No. 16 at 3).  Plaintiff then states

that he suffered serious and "extreme" pain, but defendant Schmidt "only provided

Plaintiff's Ibuprofen to elevate [sic][7] his pain and suffering, which clearly show [sic]

her Deliberate Indifference to his medical needs." (*Id.*) (citing *Hathaway v. Coughlin*,

841 F.2d 48 (2d Cir. 1988)).  However, the exhibits that plaintiff attached to his

complaint contradict his claim that defendant Schmidt was deliberately indifferent to

---

[5] This is clearly a typographical error because plaintiff's next sentence says that the "very next day" was "2/25/15." (Dkt. No. 1-2 at 5).

[6] As stated above, all plaintiff's other allegations against all the other defendants were dismissed sua sponte by Senior Judge Kahn. (Dkt. Nos. 6, 10).

[7] The court assumes that plaintiff means "alleviate" or lessen, not "elevate" or increase.

his serious medical needs.[8]

Plaintiff has attached his ambulatory health record ("AHR") to his complaint. (Dkt. No. 1-3 at 12-27). The AHR entries begin on July 26, 2014 and end on March 11, 2016.[9] (*Id.*) Plaintiff has also attached copies of his grievance documents, which include a memorandum from V. Baldwin, NA1,[10] dated March 24, 2015 which evaluates plaintiff's medical claims in conjunction with his AHR entries. (Dkt. No. 1-3 at 9). Plaintiff's AHR shows that defendant Schmidt's name is on plaintiff's AHR multiple times, but for many of those entries, plaintiff was a "no show" at sick call.[11] (Dkt. No. 1-3 at 19, 20, 23, 25, 26). Plaintiff saw defendant Schmidt on January 29, 2015, for sinus congestion, to ask for ibuprofen for his right hip, and cream for his dry skin. (*Id.* at 24). Nine days prior, on January 20, 2015, plaintiff saw a different health care provider to ask about physical therapy for his hip. (*Id.*) The nurse who examined plaintiff on January 20, 2015 wrote "MD appt" under the "Provider Orders." (*Id.*)

---

[8] Plaintiff's citation to *Hathaway* does not support his argument. In *Hathaway*, the defendants were aware that two pins in plaintiff's hip were broken, and surgery was delayed for two years. 841 F.2d at 50-51. In this case, AMCH found no injuries as a result of plaintiff's fall, and at worst, if someone misread the medical records, plaintiff's claim would be for malpractice and not deliberate indifference. In any event, plaintiff does not claim that Nurse Schmidt was involved in the previous MRI.

[9] The entries are slightly out of order. They begin in reverse order, but then plaintiff repeats some of the first entries. However, the most recent entry appears first. (Dkt. No. 1-3 at 12-27).

[10] NA stands for Nurse Administrator.

[11] In his summary of facts, plaintiff claims that the "no shows" are "false," and he blames this on either the midnight nurse who does not add the inmate's name to the "sick call list" or on corrections officers who did not call him out because the officer "may have been one you had trouble with." (Dkt. No. 1-2 at 4). Even assuming that this confusing statement is true, plaintiff does not allege that Nurse Schmidt was the nurse involved in this alleged conduct. In any event, if the nurse does not add the inmates name to the list, then it is unclear how he would be a "no show."

Thus, it appears that on January 20, 2015, the nurse made an appointment for the plaintiff to see a doctor.

The AHR indicates that plaintiff should have seen defendant Schmidt on February 17 and February 23, 2015, but he was a "no show" at both appointments. He saw defendant Schmidt on February 24, 2015 to ask her for a "flats pass" because he had pain in his left knee. (*Id.* at 23). Defendant Schmidt gave plaintiff analgesic balm, noted that he already had ibuprofen, and stated that his "MD appt. [was] pending." (*Id.*) Plaintiff fell down the stairs on February 25, 2015. Plaintiff cannot claim that defendant Schmidt was "deliberately indifferent" to any serious medical need on February 24, 2015. Although she did not give plaintiff a "flats pass" immediately, there is no indication that a nurse (as opposed to a doctor) had any authority to do so, and even assuming plaintiff obtained a "flats pass" on February 24th, there is no indication that he could have changed cells prior to the next day when he fell. Plaintiff states the flats pass was issued on March 2, 2015. (Dkt. No. 1-2 at 4).

The memorandum by NA Baldwin to the Inmate Grievance Review Committee ("IGRC") is dated March 24, 2015 in response to a grievance filed by plaintiff and supports the defendant's argument. (Dkt. No. 1-2 at 9). The memorandum states that plaintiff was seen at sick call on February 24, 2015 and requested a flats pass because he reported having trouble with his right knee. (*Id.*) "The ***nurse*** made sure that inmate Taylor was in to see a doctor for a flats pass evaluation."[12] (*Id.*) (emphasis added). Thus, plaintiff's allegation that defendant's actions on February 24th somehow caused

---

[12] The "nurse" was defendant Schmidt. (Dkt. No. 1-2 at 23).

his fall on February 25ᵗʰ because she did not act quickly enough or did not give him what he wanted immediately, do not show deliberate indifference by defendant Schmidt.

Defendant Schmidt also examined plaintiff after he claimed that he fell down the stairs on February 25, 2015. (*Id.* at 17).  Plaintiff was found "lying on his left side on [the] stair landing," complaining of neck pain. (*Id.*)  Nurse Schmidt gave plaintiff a soft collar and had his head immobilized by blocks while on the "board." (*Id.*)  Nurse Schmidt noted that plaintiff was alert, oriented, and responsive during the entire incident.  Plaintiff was transported to the emergency room at AMCH.  Plaintiff underwent a CT scan and X-rays of his back which showed no injuries. (Dkt. No. 1-3 at 9).

On February 27, 2015, plaintiff was examined by Dr. Karandy, who stated that plaintiff was in the infirmary, would not bear weight on his right leg and could not walk.  The doctor's notes stated: "will plan ORT consult."[13] (*Id.*)  On February 26, 2015 plaintiff was prescribed Tramadol (Ultram)[14] by Dr. Karandy. (Dkt. No. 1-3 at 7). Plaintiff's allegation that he had trouble obtaining medication (Dkt. No. 1-2 at 5), and because of this, his pain was not properly addressed, is flatly contradicted by his own exhibits.

In his response to the motion to dismiss, based on the alleged CT scan that was

---

[13] The court assumes that this meant that the doctor would plan an "orthopedic" consultation.

[14] Tramadol or Ultram is "similar to opioid (narcotic) analgesics. It works in the brain to change how [the] body feels and responds to pain." https://www.webmd.com/drugs/2/drug-4398-5239/ tramadol-oral/tramadol-oral/details

taken approximately one year[15] after Nurse Schmidt took care of him, showing that he had bone chips in his right leg, plaintiff now states that Nurse Schmidt was deliberately indifferent to this serious medical need because she "only provided ibuprofen."[16] (Dkt. No. 16 at 3). Nurse Schmidt could not provide plaintiff with prescription drugs, thus, she could not be deliberately indifferent to plaintiff's serious medical needs because she did not give him the drugs that he preferred.[17] Even assuming that plaintiff's condition rose to the level of a serious medical need, there is absolutely no support in the exhibits that are attached to plaintiff's complaint for his claim that Nurse Schmidt was deliberately indifferent to that need.

Plaintiff is clearly unhappy about the medical care that he received at Coxsackie. However, the defendant in this case is Nurse Schmidt. Regardless of plaintiff's allegations that he informed other medical personnel about his condition, Nurse

---

[15] Plaintiff does not specify when the updated scan was taken. His statement is not a complete sentence contains two different dates. The sentence reads as follows: "Completed a computerized tomography, [sic] scan and X-rays, And Orthopedic Specialist and February 19, 2016, Dr. Lared Roberts, on October 26, 2015." (Dkt. No. 16 at 3). On one of those two dates, it appears that plaintiff was advised about the bone chips . . . "which was [sic] not seen on an earlier MRI." (*Id.*)

[16] The court would point out that after plaintiff fell, he was taken to AMCH, and the medical providers at the hospital found no injuries after a CT scan and X-rays. (Dkt. No. 1-3 at 8) (CORC response to plaintiff's grievance). The CORC response states that plaintiff was seen by his provider on 2/27/15, 3/10/15, and 5/12/15, and he was seen by "orthopedics" on 3/25/15. He was evaluated by physical therapy on 3/16/15 and completed 23 sessions of physical therapy between 3/27 and 5/29/15. (*Id.*) He had been scheduled for an additional 8 sessions. The CORC also noted that although plaintiff complained of knee pain to the nurse on 2/24/15, he had not complained specifically about his inability to negotiate stairs until after his fall, and that although plaintiff claimed that he wrote to Deputy Superintendent Smith about this problem on 2/22/15, the Superintendent did not receive the letter until after plaintiff's fall on 2/25. (*Id.*)

[17] Plaintiff had been prescribed ibuprofen by his doctors since July of 2014, until Dr. Karandy prescribed the Tramadol after plaintiff fell on February 25, 2015. (Dkt. No. 1-3 at 7) (Plaintiff's pharmacy profile). The prescriptions are written by medical doctors. It is unlikely that Nurse Schmidt could have unilaterally changed or added to a physician's prescription.

Schmidt is not responsible for the conduct of physicians or other individuals who may have taken care of plaintiff,[18] and she is certainly not responsible or deliberately indifferent for failing to know about bone chips in a CT scan that was performed several months after she saw him, even if a physician read the prior MRI improperly.

## IV.    **Opportunity to Amend**

### A.    **Legal Standards**

Typically when the court dismisses a pro se complaint for failure to state a claim, the plaintiff is afforded an opportunity to amend his pleadings, unless it is clear that any attempt to do so would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to amend a pro se complaint where amendment is futile).

### B.    **Application**

Based on the plaintiff's arguments, submissions, and exhibits, this court finds that any attempt to state a claim against Nurse Schmidt would be futile.  Plaintiff's claim is particularly suspect because in his response to the defendant's motion, he argues that Nurse Schmidt was deliberately indifferent based upon the improper reading of his MRI (which was allegedly discovered many months after defendant cared for plaintiff) and Nurse Schmidt's failure to give plaintiff anything stronger than Ibuprofen for his pain.  The complaint, however, seems to allege that Nurse Schmidt was deliberately indifferent to plaintiff's needs by not immediately addressing his need for a flats pass.

---

[18] Personal involvement is required for the assessment of damages in a section 1983 action. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The court would recommend dismissing the case with prejudice, unless in his objections to this recommendation, plaintiff can propose an amendment that would state a claim as against this defendant based upon more than conclusory allegations.  If plaintiff does so, then Judge Kahn may allow plaintiff to amend his complaint to make proper allegations as against Nurse Schmidt.[19]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion to dismiss (Dkt. No. 14) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: March 26, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[19] If plaintiff succeeds in proposing a viable amendment, and Senior Judge Kahn finds that plaintiff should be allowed to amend his complaint, plaintiff will have to submit a complete amended complaint, which will supercede the original and which may make only claims against Nurse Schmidt, not against any of the other defendants who have been previously dismissed from this action.